**IT IS ORDERED as set forth below:**



**Date: August 6, 2019**

_____
**Paul Baisier**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | : | CASE NO. **19-53617-PMB** |
| | : | |
| **GREEN PARTS INTERNATIONAL, INC.**, | : | |
| | : | CHAPTER 11 |
| Debtor. | : | |
| ------------------------------------------------- | : | |
| | : | |
| **CONSERV EQUIPMENT LEASING, LLC,** | : | |
| | : | |
| Movant**,** | : | CONTESTED MATTER |
| | : | |
| v. | : | |
| | : | |
| **GREEN PARTS INTERNATIONAL, INC.**, | : | |
| | : | |
| Respondent. | : | |
| ------------------------------------------------- | : | |

**ORDER GRANTING MOTION**
**FOR RELIEF FROM THE AUTOMATIC STAY**

Before the Court is the *Motion for Relief from the Automatic Stay* filed by Conserv Equipment Leasing, LLC ("Movant") on April 23, 2019 (Docket No. 32)(the "Motion").  In the Motion, Movant states that the Debtor-Respondent (the "Debtor") is currently in possession of certain heavy equipment (the "Equipment") under an Equipment Lease Contract executed between Movant and the Debtor on or about August 2, 2017 (the "Lease") for a term of thirty-six (36) months.[1]  Movant asserts that the Debtor is in default under the Lease and seeks relief from the automatic stay under 11 U.S.C. § 362(d)(1) and (d)(2) so that it may secure, repossess, and sell the Equipment and exercise its state law and contract rights.  A hearing was held on the Motion on May 28, 2019, and the parties were permitted to file post-hearing briefs.  The Debtor filed its *Brief in Support of Debtor's Objection to Motion for Relief from Stay* on June 18, 2019 (Docket No. 48)(the "Debtor's Brief"), and Movant filed its *Supplemental Brief on Motion for Relief from the Automatic Stay* on the same day (Docket No. 49)("Movant's Brief").  Movant filed a *Response to Debtor's Brief in Support of Debtor's Objection to Motion for Relief from the Automatic Stay* on June 25, 2019 (Docket No. 50)("Movant's Response").  The Debtor did not file a response to Movant's Brief.

In support of the requested relief, Movant alleges that prepetition rent on the Lease is past due in the amount of $19,760.00, and that late charges of $1,050.00 and residuals of $6,000.00 are also due.  Further, it contends that the Debtor has made no post-petition rental payments, and that the remaining balance under the Lease is $51,286.34 plus late charges and residuals.  Movant argues that cause for relief has been shown under Section 362(d)(1) to allow it to repossess and

---

[1] A copy of the Lease is attached to the Motion as Exhibit "A."  The Lease provides for monthly payments of $2,000.00 plus sales taxes.

2

sell the Equipment so that it may preserve any deficiency claim, since the Equipment's value is less than the outstanding debt owed by the Debtor, this value continues to depreciate, and Movant's interest is not adequately protected. Movant further contends stay relief is warranted under Section 362(d)(2) because the Equipment is not necessary for an effective reorganization. Finally, Movant insists relief is appropriate because, in addition to its failure to pay post-petition rent, the Debtor has failed to cure the default, provide adequate protection, or provide adequate assurance of future performance under the Lease pursuant to Section 365(d)(3).

In response, the Debtor argues that the Lease is not a "true lease," but instead is a disguised security agreement, and Movant failed to perfect its security interest in the Equipment.[2] The Debtor's argument regarding the proper characterization of the Lease is based in substantial part on the option of the Debtor in the Lease to purchase the Equipment at the end of the Lease for its "Fair Market Value", [3] and a letter dated May 30, 2017 and attached to an e-mail the Debtor purports to have received from a representative of Movant (collectively, the "Letter")(copies attached to Debtor's Brief as Exhibits "B" and "C," respectively). The Debtor asserts Movant sent the Letter in reply to the Debtor's inquiry regarding "how the buy back procedure would work" regarding its option to purchase the Equipment at the end of the Lease term. In the Letter, an individual named Ben Wilder states on behalf of Movant that the Debtor will be able to purchase the Equipment by paying $3,250.00 to Movant at the end of Lease term.

---

[2] The Debtor does not otherwise appear to dispute Movant's assertions in support of relief under Section 362(d) in Debtor's Brief.

[3] The Lease contains a purchase option in Paragraph 2 that the Debtor can exercise at the end of the Lease by providing proper notice and paying the "Fair Market Value" of the Equipment. The "'Fair Market Value' shall be an amount we [Movant] reasonably estimate to be the price a willing buyer…would pay for such Equipment in an arm's-length transaction to a willing seller…." *See* Lease, ¶ 2, attached to the Motion as Exhibit "A," page 12 of 20. The Debtor contends that the amount to be paid as "Fair Market Value" in exercising the purchase option under the Lease is set forth in the Letter.

3

Citing the Uniform Commercial Code as adopted in Tennessee[4] in TENN. CODE ANN. § 47-1-203(b), the Debtor asserts that the Lease is a disguised secured transaction because, first, the

---

[4] The Lease provides in Paragraph 12 that Tennessee law controls.  The applicable Tennessee statute states as follows:

> (b) A transaction in the form of a lease creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease and is not subject to termination by the lessee; and:
>
> > (1) The original term of the lease is equal to or greater than the remaining economic life of the goods;
> >
> > (2) The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;
> >
> > (3) The lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement; or
> >
> > (4) The lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement.

TENN. CODE ANN. § 47-1-203(b).  The statute further provides:

> (c) A transaction in the form of a lease does *not* create a security interest merely because:
>
> > …
> >
> > (6) The lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.

TENN. CODE ANN. § 47-1-203(c)(6)(emphasis supplied).  Finally, the statute states:

> (d) Additional consideration is *nominal* if it is less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised.  Additional consideration is *not* nominal if:
>
> > (1) When the option to renew the lease is granted to the lessee, the rent is stated to be the fair market rent for the use of the goods for the term of the renewal determined at the time the option is to be performed; or
> >
> > (2) When the option to become the owner of the goods is granted to the lessee, the price is stated to be the fair market value of the goods determined at the time the option is to be performed.
>
> (e) The "remaining economic life of the goods" and "reasonably predictable" fair market rent, fair market value, or cost of performing under the lease agreement must be determined with reference to the facts and circumstances at the time the transaction is entered into.

TENN. CODE ANN. § 47-1-203(d) & (e)(emphasis supplied).

4

Lease is not terminable by Debtor as lessee.  Further, the $3,250.00 purchase option (created by the Lease as purportedly modified by the Letter) is a nominal amount compared to the equipment cost stated in the Lease to be $65,000.00, and is less than two (2) months of rental payments.  *See In re ES2 Sports & Leisure, LLC*, 519 B.R. 476, 480-81 (Bankr. M.D. N.C. 2014)(discussing "bright-line test" codified in a similar UCC provision under North Carolina law (N.C. GEN. STAT. § 25-1-203(b)).  In addition, the Debtor argues that under the "economic realities" test, the Lease should also be construed as a disguised security agreement.  *See In re Pillowtex, Inc.*, 349 F.3d 711, 719-23 (3d Cir. 2003); *In re Edison Bros. Stores, Inc.*, 207 B.R. 801, 809-10, 814 (Bankr. D. Del. 1997).[5]  Here, along with a nominal purchase option, the Debtor highlights the fact that aggregate rental payments to be paid of $82,868.50 exceed the original purchase price of $65,000.00, such that in reality, the Debtor *financed* the cost of the Equipment for three (3) years at 9.163%, which evidences an intent to sell.  Having paid over $80,000.00 towards the Equipment, the Debtor insists the only sensible economic alternative would be for it to exercise the purchase option by paying the additional proposed amount of $3,250.00.  *Compare In re Grubbs Constr. Co.*, 319 B.R. 698, 716-17 (Bankr. M.D. Fla. 2005)(equating "economic realities" analysis with "sensible" economics decision inquiry); *In re Phoenix Pipe & Tube, L.P.*, 154 B.R. 197, 200 (Bankr. E.D. Pa. 1993); *Edison Bros. Stores, supra*, 207 B.R. at 809-10 and nn. 8, 9, & 10.

Moreover, according to the Debtor, the Letter is rightly considered in construing the parties' intent and as evidence of value, since the Lease is inherently ambiguous in its use of the term "Fair Market Value" in Paragraph 2.  Because this term cannot be defined until Movant

---

[5] In *Pillowtex, supra*, 349 F.3d at 722, the court observed that *Edison Bros., supra*, had been superseded by statute with respect to its emphasis on the parties' subjective intent as distinguished from other factors, such as the terms of the agreement, in analyzing whether an agreement constitutes a true lease or a security agreement.

5

informs the Debtor of its amount in a separate document or communication, it is ambiguous. Further, the Lease contemplates an extraneous statement setting forth Movant's reasonable estimate of such amount when requested, which is exactly what occurred here. Finally, as noted above, the Debtor argues that Movant did not properly perfect its security interest under this disguised security agreement by filing a UCC-1 financing statement in Nevada, where the Debtor is organized.[6] Thus, the Debtor argues that Movant only holds an unsecured claim, since the Debtor may avoid the Movant's security interest using the "strong arm" powers provided under 11 U.S.C. § 544(a), and the Motion should be denied.[7]

Movant counters the Debtor's assertions regarding the proper characterization of the Lease, arguing that the terms of the Lease may not be altered by the Letter because they are not ambiguous. Movant argues Tennessee courts have held that use of the term "fair market value" does not create an ambiguity for purposes of construing the parties' intent, as Tennessee law adopts the common usage of the term, and the meaning of the term is ascertainable for both parties by researching the market. *See Harper-Wittbrodt Automotive Group, LLC v. Teague*, 2002 WL 31467888, *6 (Tenn. Ct. App. Nov. 6, 2002); *see also Four Eights, LLC v. Salem*, 194 S.W.3d

---

[6] The Debtor did not present evidence that it is organized in Nevada. Attached to the Lease, however, is a document entitled "Organizational Certificate – Lease" that reflects the Debtor, as Lessee under the Lease, is duly organized "under the laws of the State of *Georgia*" (emphasis supplied). This Certificate bears a date of August 2, 2017 and the apparent signature of the Debtor's president Asif Balagamwala. *See* Exhibit "A," page 17 of 20, as attached to the Motion. Movant states that it filed a UCC-1 Financing Statement in Georgia based on this representation. That excuse, however, is unavailing in this context. To perfect a security interest, Movant as the lender is required to ascertain from the public records (and not just from the borrower) where the borrower is organized, and to file there under that state's law. *See* U.C.C. § 9-301 (law governing perfection), § 9-307(e)(location of debtor – location of registered organization organized under state law), and § 9-501 (filing office)(cf. NEV. REV. STAT. §§ 104.9301(1), 104.9307(5), & 104.9501; O.C.G.A. §§ 11-9-301, 11-9-307(e), & 11-9-501).

[7] Although the Debtor asserts that a security interest in favor of Movant would be avoidable because it was not properly perfected, the Debtor has taken no steps to avoid that interest, which would require an Adversary Proceeding. *See* Fed.R.Bankr.P. 7001.

484, 487 (Tenn. Ct. App. 2005). Because there is no ambiguity in the Lease, Movant asserts parol evidence or other evidence of pre-contract negotiations may not be introduced to contradict the terms of the fully integrated agreement. Further, extrinsic evidence is in this case barred by the merger clause contained in Paragraph 12 of the Lease. Moreover, Movant argues, neither Mr. Wilder, an originator at Movant, nor any other representative of Movant had authority to bind Movant to an option price prior to the expiration of the Lease, since a proper estimate of fair market value could only be finalized at that time given market fluctuations in the value of the Equipment. *See* Affidavit of George M. Miller II (a Chief Operating Officer), ¶¶ 4-5, attached as Exhibit "A" to Movant's Response.

In addition, Movant states that, even if $3,250.00 is the relevant figure, that amount is not a "nominal" purchase price, as it is more than one month's rental payment, and the other factors supporting recharacterization of the Lease as a disguised security agreement under TENN. CODE ANN. § 47-1-203 are not satisfied in this case.[8] Movant further contends that the "economic realities" test has not been applied by Tennessee courts in analyzing an asserted distinction between a true lease and a security agreement, and, even if such test is applied, it supports a finding that the Lease is a true lease.

On review, Movant is correct as an initial matter that the contents of the Letter may not be used to vary or supplement the terms of the Lease by adding an option to purchase the Equipment for a price of $3,250.00, or by establishing the "Fair Market Value" referenced in the purchase

---

[8] Movant states that under the terms of the Lease, the Debtor is not bound to renew it, the Debtor does not have an option to renew it for no or nominal consideration, and the Debtor may not assume ownership of the Equipment for no consideration. Movant adds the Lease does not automatically renew, though a three-month renewal is provided in Paragraph 2 in certain circumstances. Further, Movant states that the original term of the Lease does not exceed "the remaining economic life" of the Equipment, since it would still have a value of $40,000.00 when the term ended on September 1, 2020. *See* Affidavit of George M. Miller III (a Chief Operating Officer), ¶ 8, attached as an Exhibit to Movant's Brief.

7

option contained in Paragraph 2 of the Lease.  The Lease contains a merger (or integration) clause that states as follows:

> This Lease contains the entire agreement of the parties (THERE ARE NO ORAL AGREEMENTS REGARDING THE EQUIPMENT OR THIS LEASE) and may not be supplemented, amended or varied in any way except in a writing signed by the party agreeing to such change.

Lease, ¶ 12.  By virtue of this provision, any evidence of pre-contract negotiations or separate understandings,[9] such as the purchase option price quoted in the Letter, cannot be admitted for purposes of altering the purchase option terms set forth in Paragraph 2 of the Lease.  Similarly, that price term cannot serve as data point for concluding that the Lease is a disguised security agreement.  As the Tennessee Supreme Court reasoned in *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 566 S.W.3d 671, 676, 695 (Tenn. 2019), although extrinsic evidence of prior or contemporaneous agreements can serve as contextual evidence to facilitate interpretation consistent with the parties' intent, such evidence may not be used to vary or contradict the terms of the instrument at issue.  Further, the parol evidence rule "prohibits the use of pre-contract negotiations within *the scope of* the agreement… even if that evidence is consistent with the written terms of the contract."  *Id.* at 696 (emphasis in original).

The merger clause indicates that the parties intended the Lease terms as written to embody their complete, integrated agreement, and its effect is to preclude any modification by pre-existing terms not incorporated into the Lease.[10]  To allow a price of $3,250.00 to control for purposes of

---

[9] The Letter was purportedly delivered several months prior to the execution of the Lease, and thus is the classic type of additional term to which a merger clause is intended to apply.

[10] Compare *Smith v. Hi-Speed, Inc.*, 536 S.W.3d 458, 470 (Tenn. Ct. App. 2016)(noting that parol evidence rule, as a rule of substantive law, protects the integrity of written agreements through its bar of contradictory or qualifying extraneous evidence).

8

conclusively establishing the "Fair Market Value" of the Equipment as referenced in the purchase option set forth in Paragraph 2, and by extension, to allow that term to be used for purposes of a disguised security agreement analysis, would constitute an improper variation, contradiction, or supplementation of the terms of the Lease.[11]  As contemplated in the Lease, "Fair Market Value" is to be determined by Movant after investigation into market conditions near the time of the exercise of the option.  The Debtor would communicate its intent to purchase to Movant "[n]o more than 180 days and no less than 30 days prior to the end of the Lease Term…."  Lease, ¶ 2.  The amount stated in the Letter, therefore, cannot be used to displace the option to sell at a fair market value at an amount to be determined by Movant within such time frame.  Further, resort to this extrinsic term is not justified on the basis of an asserted ambiguity in the Lease, as Tennessee courts have determined that use of the term "fair market value" is an ascertainable value with a common usage and is enforceable.[12]

The Debtor has also not shown that "Fair Market Value" as used in Paragraph 2 of the Lease (without reference to the Letter) is sufficiently negligible to support the recharacterization of the Lease as a security agreement.  As observed in *Jahn v. M.W. Kellogg Co. (In re Celeryvale Transport, Inc.)*, 822 F.2d 16, 18 (6th Cir. 1987), quoting *In re Coors of the Cumberland, Inc.*, 19 B.R. 313, 318 (Bankr. M.D. Tenn. 1982), use of this term results in an inference that the

---

[11] As cited by Movant, in an analogous situation Georgia courts have also held that extrinsic evidence concerning an option to purchase equipment for a nominal sum may not be admitted when a merger clause is present.  *See Chapman v. Avco Fin. Svcs. Leasing Co.*, 387 S.E.2d 391, 393 (Ga. App. 1989).  As noted above, Movant presented evidence that the Equipment would be worth $40,000.00 at the end of the Lease.  The Debtor has presented no contradictory evidence as to this valuation.  Consequently, a purchase price of $3,250 for the Equipment would be considered nominal (if it were relevant), and the admission of the pre-Lease "agreement" to that price would result in precisely the type of variation that the merger clause was intended to (and does) prevent.

[12] *See Four Eights, supra*, 194 S.W.3d 484 (holding that parties' inclusion of determination of fair market value based on future negotiations, however, rendered option to purchase under the lease unenforceable as an 'agreement to agree').

9

consideration to be paid for an associated purchase by a lessee is not nominal, though this inference may be rebutted. No evidence has been offered by the Debtor to challenge such an inference—such as that the entire useful life of the Equipment would have been expended during the lease term.

Without the Letter, which must be excluded from consideration, the presence of the purchase option at "Fair Market Value" does not make the Lease a disguised security interest. Without a $3,250.00 purchase option, none of the other factors that would make recharacterization appropriate exist either. Consequently, the Lease is not a disguised security agreement, and thus Movant was not required to perfect a security interest in connection with the Lease. Further, the Movant has established its entitlement to relief from stay under Section 362(d).

In view of the foregoing, it is

**ORDERED** that the Motion is **GRANTED**; and it is further

**ORDERED** that the automatic stay is **MODIFIED** as to the Movant pursuant to 11 U.S.C. § 362(d) so that Movant may exercise its state law and contract rights under the Lease against the Debtor with respect to its recovery and disposition of the Equipment.

The Clerk's Office is directed to serve a copy of this Order upon counsel for the Debtor, counsel for the Movant, and the United States Trustee.

[**END OF DOCUMENT**]